**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ASHLEY VERDIN, individually and on behalf of A.H., a minor child,**<br><br>**A.H., a minor child, by and through his Legal Guardian, ASHLEY VERDIN**<br><br>***Plaintiff,***<br><br>**– VERSUS –**<br><br>**ST. TAMMANY PARISH SCHOOL BOARD**<br><br>***Defendant.*** | **CIVIL**<br><br>**ACTION No.:**<br><br>**SECTION:**<br><br>**JUDGE:**<br><br>**MAG. JUDGE:** |

**COMPLAINT**

**INTRODUCTION**

**1.** This civil action is brought under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 et seq., and its implementing Louisiana regulations, seeking judicial review of a final administrative due process decision, declaratory and equitable relief, compensatory education, expungement of improper disciplinary findings and records, attorneys' fees and costs, and other appropriate relief. Plaintiff also brings related claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with Disabilities Act ("ADA"), as set forth below.

**2.** In addition to violations of the IDEA, Plaintiff asserts related claims under Section 504 and the ADA arising from Defendant's discriminatory treatment and exclusion of A.H., a student with disabilities, from educational services and participation in public education through disciplinary actions based on behaviors directly related to his disabilities, Defendant's failure

to appropriately implement and accommodate his disability-related supports and behavioral needs, and Defendant's prolonged denial of educational services following the challenged manifestation determination review ("MDR") and expulsion proceedings.

**3.** Plaintiff further alleges that Defendant retaliated against Parent and A.H. for asserting IDEA and disability-related rights, including requesting records and implementation documentation, challenging the MDR, disputing the District's disciplinary actions and failures to implement the Individualized Education Program ("IEP") and Behavioral Intervention Plan ("BIP"), and filing for expedited due process relief. Following Parent's protected advocacy activity, Defendant proceeded with exclusionary disciplinary and placement decisions despite unresolved procedural disputes, denied A.H. meaningful access to educational services during the pendency of those disputes, and ultimately disenrolled A.H. without proper notice or procedural protections. These actions interfered with A.H.'s right to a free appropriate public education and constituted discrimination and retaliation on the basis of disability, thereby entitling Plaintiff to appropriate declaratory, equitable, and injunctive relief.

**4.** This action also seeks judicial review of the Decision and Order issued on February 20, 2026, and transmitted on February 24, 2026, by Administrative Law Judge Esther A. Redmann ("ALJ") in Louisiana Division of Administrative Law Docket No. 2025-24491-DOE-IDEA ("Decision"). The Decision upheld the manifestation determination review ("MDR"), affirmed the District's disciplinary exclusion of A.H., rejected Parent's procedural and implementation claims, and denied requested relief despite substantial evidence supporting Plaintiff's claims that the District failed to comply with the IDEA's manifestation determination procedures, failed to properly implement A.H.'s IEP and BIP, denied Parent meaningful participation in the MDR process, improperly deprived A.H. of educational services following disciplinary removal, and failed to comply with IDEA procedural safeguards governing disciplinary removals and educational responsibility.

**5.** When a school district violates IDEA procedural safeguards designed to protect children with disabilities and their parents, the child and parent are entitled to appropriate equitable relief

under federal law, including compensatory education, reversal of improper disciplinary determinations, expungement of improper disciplinary findings, and appropriate declaratory and injunctive relief. Additionally, where a school district excludes a student from educational services, disciplines a student for conduct directly related to the student's disabilities without appropriately implementing or accommodating disability-related needs, or retaliates against a parent for protected advocacy activity, such actions independently violate Section 504 and the ADA. Plaintiff alleges that Defendant's conduct was intentional, discriminatory, retaliatory, and undertaken with deliberate indifference to A.H.'s federally protected rights.

## JURISDICTION AND VENUE

**6.** This action arises under the IDEA, Section 504, the ADA, and related provisions of Louisiana law and regulations governing the educational rights of students with disabilities and protections against disability-based discrimination and retaliation.

**7.** Plaintiff brings this action as an aggrieved party pursuant to 20 U.S.C. § 1415 (i)(2). Plaintiff also seeks relief under Section 504 pursuant to its enforcement provision at 29 U.S.C. § 794a, and under Title II of the ADA through 42 U.S.C. § 12133, which incorporates the remedies of Section 504. The Plaintiff, having been aggrieved by the Decision of the ALJ, now files this timely[1] civil action seeking relief.

**8.** This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, including the IDEA, Section 504, the ADA, and related federal civil rights statutes protecting students with disabilities. Plaintiff brings this action as an aggrieved party pursuant to 20 U.S.C. § 1415(i)(2), and additionally seeks relief under Section 504 pursuant to 29 U.S.C. § 794a and Title II of the ADA pursuant to 42 U.S.C. § 12133. The Court additionally has authority to grant declaratory and equitable relief pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii)

and 28 U.S.C. §§ 2201 and 2202.

**9.** Venue is proper because Plaintiff and Defendant are located in this district and the claims arose in this district pursuant to 28 U.S.C. § 1391(b).

**10.** Plaintiff has exhausted all administrative remedies required under the IDEA. Parent filed an expedited due process complaint, participated in the administrative hearing process, and received a final administrative decision subject to judicial review under 20 U.S.C. § 1415(i)(2).

**<u>STANDARD OF REVIEW</u>**

**11.** Under 20 U.S.C. § 1415(i)(2)(C), this Court is required to receive the records of the administrative proceedings, hear additional evidence at the request of a party, and, based upon the preponderance of the evidence, grant such relief as the Court determines appropriate.

**12.** The Fifth Circuit has recognized that judicial review under the IDEA requires an independent review of the administrative proceedings while giving due weight to administrative findings. *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245 (5th Cir. 1997); *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341 (5th Cir. 2000). Courts have described this standard as "modified de novo" review, reflecting the district court's authority to conduct an independent analysis while giving appropriate weight to the administrative findings. Under 20 U.S.C. § 1415(i)(2)(C), this Court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the Court determines is appropriate. Although a district court gives due weight to administrative findings, it conducts an independent review of the facts and applicable law. *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982); *Cypress-Fairbanks*, 118 F.3d at 252. The Fifth Circuit has repeatedly applied this framework in reviewing IDEA disputes involving the educational rights and protections afforded to students with disabilities. *See Seth B. ex rel. Donald B. v. Orleans Parish Sch. Bd.*, 810 F.3d 961 (5th Cir. 2016).

**13.** While the Court gives due weight to supported factual findings and credibility

determinations made during the administrative proceedings, legal conclusions are reviewed de novo. These legal questions include issues concerning manifestation determination standards, procedural safeguard requirements, the legal standards governing failure-to-implement claims, burden allocation, parent participation rights, and the disciplinary protections afforded under the IDEA.

**14.** Although administrative findings are entitled to due weight, the Court may decline to defer to such findings where the ALJ applied an incorrect legal standard, failed to consider material evidence, made findings unsupported by the administrative record, or relied upon reasoning that is conclusory or otherwise inconsistent with the IDEA and its implementing regulations.

**15.** Claims under Section 504 and the ADA are governed by related but distinct standards. To establish a Section 504 violation, Plaintiff must demonstrate that: (1) A.H. is a qualified individual with a disability; (2) Defendant is a recipient of federal financial assistance; and (3) A.H. was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in a covered program or activity solely by reason of his disability. *See* 29 U.S.C. § 794(a). To establish a Title II ADA violation, Plaintiff must demonstrate that: (1) A.H. is a qualified individual with a disability; (2) Defendant is a public entity; and (3) A.H. was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in Defendant's services, programs, or activities by reason of his disability. *See* 42 U.S.C. § 12132. Defendant is both a recipient of federal financial assistance and a public entity subject to both statutes.

**16.** Plaintiff's Section 504 and ADA claims are properly before this Court because Plaintiff fully exhausted the administrative procedures available under the IDEA prior to filing suit. In *Fry v. Napoleon Community Schools*, the Supreme Court explained that exhaustion under the IDEA is required where the gravamen of the complaint seeks relief for the denial of a free appropriate public education ("FAPE") and the core injury is educational in nature such that it could have been addressed through the IDEA's administrative process. Here, Plaintiff's

claims arise from the alleged denial of FAPE and related procedural violations under the IDEA, and Plaintiff exhausted all available administrative remedies before filing suit. Furthermore, to the extent Plaintiff asserts independent discrimination or retaliation claims under Section 504 and the ADA seeking relief unavailable under the IDEA, such claims are not subject to IDEA exhaustion requirements. *See Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 (2017); *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023).

## PARTIES

**17.** Plaintiff Ashley Verdin ("Parent") is the mother and legal guardian of A.H. and brings this action on his behalf pursuant to the IDEA. Parent is a citizen and resident of the State of Louisiana. Parent asserts claims in her representative capacity on behalf of A.H. and, where applicable, in her own right as a party aggrieved by the administrative decision pursuant to 20 U.S.C. § 1415(i)(2).

**18.** Plaintiff A.H. is a minor child with a disability who is eligible for special education and related services under the IDEA. A.H. is a citizen and resident of the State of Louisiana. At all relevant times, A.H. was entitled to receive special education and related services from Defendant St. Tammany Parish School Board. A.H. is also an individual with a disability within the meaning of Section 504 and the ADA and is entitled to the protections afforded under those statutes.

**19.** Defendant St. Tammany Parish School Board ("District") is a local educational agency ("LEA") organized under the laws of the State of Louisiana and responsible for providing A.H. with a FAPE. Defendant receives federal financial assistance within the meaning of Section 504 and is a public entity within the meaning of Title II of the ADA.

## STATEMENT OF FACTS

### A. Student Eligibility

**20.** A.H. is a student with disabilities eligible for special education and related services under the IDEA under the eligibility classifications of Emotional Disturbance and Other Health

Impairment. A.H.'s disability profile includes diagnoses of Attention-Deficit/Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"), which significantly affect his executive functioning, behavioral regulation, impulse control, attention, emotional regulation, and ability to safely navigate school environments without intensive behavioral supports and adult supervision.

**21.** As a result of his disabilities, A.H. experiences significant difficulty with impulsivity, emotional dysregulation, transitions between settings, attention, self-regulation, and behavioral decision-making. A.H. also demonstrates sensation-seeking behaviors, poor judgment, and difficulty responding appropriately in unstructured or minimally supervised environments. These disability-related needs were known to the District and documented throughout A.H.'s educational records, evaluations, behavior planning documents, and IEP discussions. A.H.'s disabilities require structured supports, proactive intervention, consistent behavioral supervision, and coordinated mental health and behavioral monitoring in order for him to safely access educational services and receive a FAPE.

**22.** On or about August 12, 2025, the parties convened a State Facilitated IEP meeting to address ongoing concerns regarding A.H.'s behavioral needs, educational programming, supervision requirements, and access to appropriate supports within the school environment. As a result of that meeting, the parties developed and implemented a revised IEP and BIP specifically designed to address A.H.'s known disability-related behaviors and vulnerabilities during school transitions and unstructured settings.

**23.** The revised IEP and BIP recognized that A.H. required close supervision and significant behavioral support in order to safely participate in the school environment. The plans provided for a dedicated 1:1 paraprofessional during hallway transitions and other periods of increased behavioral risk, along with specific supervision requirements intended to ensure consistent monitoring of A.H.'s behavior and interactions throughout the school day. The record further reflected that A.H.'s BIP specifically required that he remain within approximately two to five

feet of his assigned paraprofessional during transitions and other identified high-risk periods. District testimony confirmed that this supervision requirement was an actual provision of the BIP itself rather than a mere recommendation or informal strategy. The IEP and BIP also required weekly mental health and behavioral monitoring to assess emotional functioning, behavioral patterns, and the effectiveness of interventions. In addition, the plans called for structured behavioral supports and adult supervision during less structured settings and included interventions specifically designed to address A.H.'s impulsivity, attention difficulties, emotional dysregulation, poor judgment, and self-regulation difficulties associated with his disabilities.

**24.** The District's own evaluation and IEP records further identified "sensation seeking" as an area in which A.H. required support. However, District testimony confirmed that, despite identifying sensation seeking as a support need within A.H.'s educational planning documents, the District did not develop specific interventions, behavioral strategies, or targeted recommendations to address that need. District personnel further acknowledged that the identified concern was instead generally monitored without implementation of specific behavioral supports directed toward the sensation-seeking behaviors identified in the evaluation and IEP records.

**B. December 10, 2025 Incident and MDR Proceedings**

**25.** On December 10, 2025, during a class transition period, A.H. allegedly displayed an inappropriate image stored on his cellphone to another student while in the hallway between classes.

**26.** The alleged incident occurred during an unstructured hallway transition, a setting specifically identified in A.H.'s IEP and BIP as requiring heightened supervision, behavioral monitoring, and paraprofessional support due to A.H.'s documented impulsivity, poor judgment, dysregulation, and vulnerability to behavioral escalation in less structured environments.

**27.** At the time of the incident, A.H. was assigned a paraprofessional to provide supervision during

hallway transitions pursuant to his IEP and BIP. The assigned paraprofessional testified that she was following A.H. during the transition at issue but did not observe A.H. display his cellphone or show the alleged image to another student.

**28.** Following the incident, the District initiated disciplinary proceedings against A.H. and scheduled a MDR purportedly pursuant to the IDEA to determine whether the alleged conduct was caused by, or had a direct and substantial relationship to, A.H.'s disabilities or resulted from the District's failure to implement his IEP and BIP.

**29.** At the time the District initiated the MDR process, A.H. had been suspended for fewer than ten school days. Despite the absence of a finalized disciplinary change of placement when the MDR was convened, the District proceeded with the MDR process and later relied upon the MDR findings to support expulsion, exclusion from services, and continued disciplinary removals.

**30.** Following the December 10, 2025 incident, Parent was initially informed that A.H. had been "expelled." The District later characterized A.H.'s status as an "exclusion" rather than an expulsion but failed to provide timely written clarification identifying the nature, duration, start date, or procedural basis for the removal.

**31.** Prior to the MDR meeting, Parent repeatedly requested records and information necessary to meaningfully participate in the MDR process and evaluate whether the District had properly implemented A.H.'s educational and behavioral supports. Parent specifically requested, among other things:

a. surveillance and video evidence relating to the incident;

b. implementation logs and documentation relating to A.H.'s IEP and BIP supports;

c. paraprofessional notes, supervision records, and documentation;

d. disciplinary and investigative records relating to the incident;

e. mental health monitoring data and behavioral review records; and

f. clarification regarding whether the District was proposing a disciplinary change of

placement, expulsion, exclusion, or other long-term disciplinary removal.

**32.** Parent repeatedly informed the District that she was not refusing to participate in the MDR process, but instead sought access to the information and records necessary to allow for informed and meaningful parental participation as contemplated by the IDEA's procedural safeguards.

**33.** District personnel informed Parent that whether anyone actually viewed the alleged image was "immaterial" to the MDR process, thereby improperly narrowing the factual inquiry relevant to manifestation and implementation issues.

**34.** Prior to the MDR meeting, the District had not provided Parent with prior written notice ("PWN") identifying any proposed disciplinary change of placement, expulsion recommendation, exclusion, or other long-term removal, despite Parent's repeated requests for clarification regarding A.H.'s disciplinary status and the basis for the MDR process. As a result, Parent lacked the information necessary to fully understand the District's disciplinary posture, the purpose and scope of the MDR, and the potential consequences flowing from the MDR process.

**35.** Despite the unresolved disputes regarding access to records, implementation documentation, and relevant evidence, the District proceeded with the MDR meeting on December 19, 2025 without Parent present.

**36.** The MDR team did not collectively review the underlying video footage during the MDR process and instead relied upon descriptions or summaries of the alleged incident provided by District personnel, as confirmed by testimony presented during the administrative proceedings.

**37.** The MDR team failed to collectively review and meaningfully consider all relevant information required under the IDEA and 34 C.F.R. § 300.530(e), including, but not limited to:

a. mental health monitoring records and behavioral data;

b. documentation regarding implementation of A.H.'s IEP and BIP;

c. paraprofessional supervision logs and related records;

d. complete video evidence and related investigative materials; and

e. reliable information regarding whether A.H.'s required behavioral supports and supervision were consistently implemented at the time of the alleged incident.

**38.** The District also failed to meaningfully consider information concerning prior similar behaviors, behavioral concerns, and incidents known to District personnel and MDR team members that were relevant to A.H.'s disability-related needs and behavioral functioning, including information not formally reflected in disciplinary records.

Despite the absence of complete implementation and behavioral information, the MDR team concluded that the alleged conduct was not caused by, and did not have a direct and substantial relationship to, A.H.'s disabilities, that the conduct was not the direct result of the District's failure to implement A.H.'s IEP or BIP, and that expulsion and placement in an alternative educational setting were appropriate disciplinary responses.

**C. Expulsion, Denial of Services, and Retaliatory Conduct**

**39.** On December 19, 2025, Parent filed an expedited due process complaint challenging the MDR determination, the District's disciplinary actions, the adequacy of implementation of A.H.'s IEP and BIP, and the District's compliance with the IDEA's procedural safeguards.

**40.** Following Parent's protected advocacy activity and assertion of A.H.'s IDEA and disability-related rights, the District escalated exclusionary disciplinary measures against A.H., including pursuing expulsion and continued removal from his educational placement.

**41.** On or about January 13, 2026, the District formally expelled A.H. and assigned him to an alternative educational setting despite the ongoing disputes concerning manifestation, implementation failures, and IDEA procedural compliance.

**42.** From approximately December 10, 2025 through February 12, 2026, A.H. received no educational instruction, specially designed instruction, behavioral intervention services, counseling, or related services despite remaining eligible for protections and services under the IDEA. During that period, A.H. was deprived of approximately thirty-nine (39) instructional

days based on the District's 2025–2026 academic calendar, excluding scheduled holidays and school closures. The prolonged interruption in educational programming resulted in loss of instructional time, interruption of behavioral and mental health supports, educational harm, regression, and denial of educational benefit.

**43.** Following the disciplinary proceedings, the District attempted to disenroll A.H. and terminate or shift responsibility for his educational services without providing legally sufficient prior written notice or complying with the procedural safeguards and protections guaranteed under the IDEA, Section 504, and the ADA.

**44.** Parent subsequently filed an expedited due process complaint challenging the MDR, disciplinary actions, implementation failures, and related IDEA violations. Upon the filing of the due process complaint, A.H. became entitled to the IDEA's automatic stay-put protections under 20 U.S.C. § 1415(j).

**45.** Despite the IDEA's automatic stay-put protections, the District later continued efforts to terminate or transfer educational responsibility for A.H. to another parish during the pendency of the proceedings. Parent therefore sought formal enforcement of A.H.'s stay-put rights through the administrative process.

**46.** The ALJ subsequently ruled in Parent's favor on the stay-put issue and ordered continuation of A.H.'s educational protections and services during the pendency of the proceedings. Despite the automatic protections afforded under the IDEA's stay-put provision, Parent was nevertheless required to expend substantial time, effort, and resources to enforce rights and protections that should have remained in place during the pendency of the dispute.

**47.** Following Parent's repeated requests for records, implementation documentation, procedural safeguards, and clarification regarding the District's disciplinary actions, the District continued to proceed with disciplinary and exclusionary actions despite unresolved procedural disputes, failed to timely provide requested information necessary for informed participation, minimized concerns regarding implementation failures and factual disputes surrounding the alleged

incident, and continued escalating disciplinary measures against A.H. during the pendency of Parent's advocacy efforts and due process proceedings.

**48.** The close temporal proximity between Parent's protected advocacy activity including requests for records, objections to the MDR process, and the filing of the expedited due process complaint and the District's escalation of exclusionary disciplinary measures supports a direct causal connection between the protected activity and the adverse educational actions taken against A.H.

**49.** The timing, sequence, and nature of the District's actions support a reasonable inference that the District retaliated against Parent and A.H. for asserting rights protected under the IDEA, Section 504, and the ADA, including the right to challenge disciplinary decisions, request records, seek procedural safeguards, and advocate for the continued provision of appropriate educational services and supports.

## CLAIMS FOR RELIEF

### Count I

**50.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**51.** The ALJ committed reversible legal error by improperly narrowing the scope of the manifestation determination inquiry required under the IDEA and 34 C.F.R. § 300.530(e). Rather than conducting the individualized, disability-informed analysis required by law, the ALJ improperly focused on whether A.H. had previously engaged in identical or substantially similar misconduct. The IDEA does not require a student to demonstrate a prior history of identical conduct in order for behavior to constitute a manifestation of disability. The proper inquiry required the ALJ to determine whether the conduct at issue was caused by, or had a direct and substantial relationship to, A.H.'s known disability-related characteristics, including impulsivity, poor judgment, emotional dysregulation, attention deficits, executive functioning impairments, sensation-seeking behaviors, and difficulty navigating unstructured transitions without intensive supervision and behavioral supports.

**52.** The ALJ further relied upon factual inferences regarding the alleged conduct despite the absence of testimony from any witness who directly observed the alleged image in real time. No witness testified that they personally observed A.H. display the alleged image during the interaction at issue, and the assigned paraprofessional responsible for supervising A.H. during hallway transitions likewise testified that she did not observe A.H. display his cellphone or engage in the alleged conduct. Nevertheless, the ALJ relied upon indirect descriptions, characterizations, and assumptions regarding the incident while minimizing unresolved factual disputes concerning what actually occurred, whether the image was viewed, the circumstances surrounding the interaction, and the extent to which the District's required supervision and behavioral supports were being implemented at the time of the alleged conduct.

**53.** The ALJ also relied on assumptions about alleged "premeditation" without meaningfully considering how A.H.'s disabilities affect his impulse control, judgment, emotional regulation, decision-making, and ability to think through consequences. The ALJ treated the alleged planning involved in possessing or accessing a cellphone image as proof that the conduct was unrelated to A.H.'s disabilities, even though there was no disability-specific expert testimony supporting that conclusion. However, the administrative record included testimony and discussion showing that the incident could have been impacted by A.H.'s known disability-related characteristics, including impulsivity, behavioral dysregulation, poor judgment, ADHD-related impairments, and ODD-related behaviors. District testimony further acknowledged that A.H.'s ADHD could manifest through the type of conduct alleged in this case, including showing another student an inappropriate image. Nevertheless, the ALJ relied on generalized assumptions about intentional behavior instead of conducting the individualized disability-based analysis required under the IDEA and failed to recognize that disability-related impulsive behavior can still involve poor judgment, access to materials, or some degree of forethought.

**54.** The ALJ also failed to meaningfully address substantial evidence showing that the District may not have properly implemented important parts of A.H.'s IEP and BIP at the time of the alleged

incident. The evidence showed that the incident occurred during an unstructured hallway transition, which was specifically identified by the IEP Team as a high-risk setting requiring close supervision, behavioral support, and adult monitoring because of A.H.'s known disability-related difficulties with impulsivity, emotional regulation, judgment, and transitions. The record reflected ongoing disputes regarding whether the District consistently provided the required paraprofessional supervision, behavioral monitoring, mental health supports, and other interventions designed to prevent impulsive or escalating behavior during transitions and other less structured settings. The evidence further showed that the MDR team failed to verify whether these required supports and services were actually being implemented at the time of the incident, including required transition supervision, behavioral monitoring obligations, paraprofessional support, and weekly mental health review requirements. Despite these significant implementation concerns, the ALJ failed to meaningfully analyze whether the alleged conduct was the direct result of the District's failure to properly implement A.H.'s IEP and BIP, as required under 34 C.F.R. § 300.530(e).

**55.** The ALJ also failed to properly evaluate whether the District actually provided the supports and services required under A.H.'s IEP and BIP, followed IDEA disciplinary protections, and conducted a legally sufficient manifestation determination review. The District controlled the records and information needed to show whether A.H.'s required supervision, behavioral supports, monitoring, and services were actually being provided, including implementation records, supervision documentation, behavioral data, mental health records, and disciplinary records. However, the record reflected missing information, incomplete documentation, and ongoing disputes regarding whether these required supports were consistently provided at the time of the alleged incident. Despite these unresolved issues and gaps in the evidence, the ALJ nevertheless upheld the District's conclusions regarding implementation and manifestation without meaningfully addressing the incomplete, missing, or disputed evidence concerning implementation and supervision.

**56.** The ALJ further minimized or failed to adequately address significant procedural violations that impeded Parent's ability to meaningfully participate in the MDR process and related disciplinary proceedings. Prior to the MDR meeting, Parent repeatedly requested records and information necessary to evaluate the allegations, assess implementation fidelity, and participate in an informed manifestation determination, including video evidence, paraprofessional documentation, implementation records, mental health monitoring data, and clarification regarding the proposed disciplinary action and change of placement. District personnel further informed Parent that whether anyone actually viewed the alleged image was "immaterial" to the MDR process, thereby improperly minimizing disputed factual issues directly relevant to manifestation, implementation, and disciplinary determinations. Despite these unresolved requests and disputes concerning access to relevant evidence, the District proceeded with the MDR meeting without Parent present. The ALJ failed to adequately consider how the denial of access to relevant information and the District's decision to proceed under those circumstances significantly interfered with Parent's IDEA procedural safeguards and right to meaningful participation in educational decision-making.

**57.** Rather than conducting the careful and individualized analysis required under the IDEA, the MDR process improperly focused on justifying a disciplinary outcome while minimizing important disability-related considerations, unresolved implementation concerns, and disputed factual issues surrounding the alleged incident. The MDR process failed to meaningfully evaluate how A.H.'s known disabilities, including impulsivity, poor judgment, emotional dysregulation, executive functioning difficulties, and the need for close supervision during transitions, may have affected the alleged conduct. The process also failed to adequately examine whether the District consistently implemented the behavioral supports, paraprofessional supervision, monitoring obligations, and mental health interventions required under A.H.'s IEP and BIP. Instead of carefully reviewing all relevant evidence and disputed facts in a neutral and deliberative manner, the MDR process relied heavily on assumptions, incomplete information, and the District's characterization of the incident while failing to meaningfully address factual disputes,

implementation concerns, and procedural issues raised by Parent.

**58.** The ALJ's findings and conclusions are unsupported by the preponderance of the evidence, contrary to the procedural and substantive protections guaranteed under the IDEA, and legally erroneous. The administrative decision improperly disregarded evidence concerning A.H.'s disability-related behavioral characteristics, failed implementation of behavioral supports, deficiencies in the MDR process, and procedural violations affecting Parent's participation rights. As a result of these errors, the ALJ improperly upheld disciplinary actions, expulsion-related consequences, and changes in educational placement that were inconsistent with the IDEA's disciplinary protections for students with disabilities.

**59.** The ALJ further erred by accepting She'Kayla Smith as an expert witness in the areas of school psychology, evaluations, and IDEA assessments without permitting meaningful voir dire or allowing Parent a fair opportunity to challenge the scope of the proposed expert testimony. When Parent objected and explained that counsel had not been afforded an opportunity to conduct voir dire regarding Ms. Smith's qualifications, methodology, training, experience, or the reliability and relevance of her proposed opinions, the ALJ nevertheless immediately accepted the witness as an expert and directed the proceedings to move forward. The record reflects that the ALJ relied primarily upon the existence of Ms. Smith's resume and disclosure rather than conducting any meaningful inquiry into the proper scope or foundation of the proposed expert testimony. As a result, Parent was deprived of a meaningful opportunity to challenge the qualifications, reliability, foundation, and limitations of the expert testimony before the witness was accepted as an expert by the tribunal.

**60.** Pursuant to 20 U.S.C. § 1415(i)(2)(C), Plaintiff seeks reversal of the ALJ's decision, declaratory relief, appropriate equitable relief, enforcement of A.H.'s IDEA rights, compensatory educational services, correction of educational records as appropriate, and such additional relief as this Court determines is just and proper.

COUNT II

**61.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**62.** Defendant denied A.H. a FAPE under the IDEA by failing to provide the educational services, behavioral supports, supervision, and procedural protections required by law and by A.H.'s IEP and BIP.

**63.** Defendant also failed to provide the supervision, paraprofessional support, behavioral monitoring, and interventions required under A.H.'s IEP and BIP. Although A.H. had been assigned a paraprofessional to supervise him during hallway transitions, the assigned paraprofessional testified that she did not observe A.H. display the alleged image during the incident at issue despite following him during the transition. This evidence further demonstrated unresolved concerns regarding the adequacy and implementation of the District's required supervision and behavioral supports at the time of the incident.

**64.** The District further failed to consistently implement the behavioral supervision, monitoring, and intervention supports required under A.H.'s IEP and BIP despite knowledge that A.H.'s disability-related needs required heightened structure, supervision, and behavioral intervention during transitions and other unstructured settings.

**65.** Defendant further denied A.H. a FAPE by removing him from school through exclusionary discipline and failing to continue providing appropriate educational services after his removal. Following the December 10, 2025 incident, A.H. was removed from his educational placement, expelled, and placed in an alternative setting despite ongoing disputes regarding manifestation, implementation failures, and compliance with IDEA protections.

**66.** After A.H.'s disciplinary removal, Defendant failed to provide meaningful access to instruction, specially designed instruction, behavioral services, counseling, related services, and educational supports necessary for A.H. to continue making progress toward his IEP goals and participate in the general education curriculum.

**67.** Defendant also failed to follow the IDEA's required disciplinary procedures, including

requirements related to manifestation determinations, parental participation, review of implementation failures, procedural safeguards, and continued educational services during disciplinary removals.

**68.** Defendant's procedural violations significantly interfered with Parent's ability to meaningfully participate in educational decision-making and deprived A.H. of educational benefits and services guaranteed under the IDEA.

**69.** As a direct result of Defendant's actions and failures, A.H. suffered loss of educational services, interruption of behavioral and mental health supports, loss of instructional time, educational harm, regression, and denial of educational opportunities.

**70.** Plaintiff seeks declaratory relief, reversal of the administrative decision as appropriate, compensatory educational services, correction of educational records as appropriate, reimbursement, equitable relief, attorneys' fees and costs as authorized by law, and all additional relief the Court finds just and proper.

COUNT III

**71.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**72.** Defendant violated the procedural safeguards required under the IDEA in several ways.

**73.** Defendant failed to provide timely and legally sufficient prior written notice regarding important decisions affecting A.H.'s educational placement, disciplinary removals, services, and disenrollment. The District failed to clearly explain the actions it proposed or refused, the reasons for those decisions, the information relied upon, and Parent's procedural rights under the IDEA.

**74.** Defendant failed to ensure meaningful parental participation throughout the disciplinary and manifestation determination process. Parent repeatedly requested records, information, clarification, and implementation documentation necessary to understand the allegations against A.H., evaluate whether the District had implemented the IEP and BIP, and meaningfully participate in educational decision-making. Despite those requests, the District proceeded with

important decisions affecting A.H.'s education without ensuring Parent had access to the information necessary for informed participation.

**75.** Defendant failed to properly review all relevant information during the MDR as required under 34 C.F.R. § 300.530(e). The MDR team failed to meaningfully consider important information related to A.H.'s disabilities, behavioral supports, implementation of the IEP and BIP, mental health monitoring, paraprofessional supervision, and other records directly relevant to whether the conduct was related to A.H.'s disabilities or caused by the District's failure to implement his educational program.

**76.** Defendant also failed to timely provide requested records, implementation logs, behavioral documentation, paraprofessional records, mental health monitoring data, disciplinary information, and other evidence necessary for Parent to evaluate the District's actions and participate in the MDR process. The District's failure to provide this information limited Parent's ability to advocate for A.H. and challenge the District's disciplinary decisions.

**77.** The MDR process itself was procedurally deficient. The District proceeded with the MDR despite unresolved disputes regarding access to records and implementation information and despite Parent's repeated statements that she was not refusing participation but needed the requested information to meaningfully participate. The District nevertheless proceeded with the MDR without Parent present and without ensuring the team had reviewed all relevant information required under the IDEA.

**78.** Defendant further violated the IDEA by improperly disenrolling A.H. without complying with required procedural safeguards, including proper notice, procedural protections, and continued access to IDEA services and protections.

**79.** Defendant further violated the IDEA by convening and relying upon a manifestation determination process before a qualifying disciplinary change of placement had been finalized, despite Parent's objections regarding the disciplinary posture, suspension length, and procedural basis for the MDR.

**80.** The ALJ failed to adequately analyze whether the statutory conditions triggering an MDR under 20 U.S.C. § 1415(k) and 34 C.F.R. §§ 300.530–300.536 had actually been satisfied at the time the MDR was convened.

**81.** These procedural violations significantly interfered with Parent's right to meaningfully participate in educational decision-making, deprived A.H. of educational benefits and protections guaranteed under the IDEA, and contributed to the denial of a FAPE.

**82.** As a result of Defendant's procedural violations, A.H. suffered educational harm, loss of services, interruption of supports, loss of instructional time, and denial of important IDEA protections and safeguards.

**83.** Plaintiff seeks declaratory relief, reversal of the administrative decision as appropriate, compensatory educational services, correction of educational records as appropriate, reimbursement, equitable relief, attorneys' fees and costs as authorized by law, and all additional relief the Court finds just and proper.

COUNT IV

**84.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**85.** A.H. is a qualified individual with a disability within the meaning of Section 504 and the ADA. At all relevant times, Defendant knew of A.H.'s disabilities, behavioral needs, mental health needs, and need for behavioral supports, supervision, accommodations, and special education services.

**86.** Defendant excluded A.H. from participation in public education and denied him the benefits of educational services, programs, supports, and activities because of his disabilities. Defendant disciplined, removed, expelled, and ultimately disenrolled A.H. despite knowledge that his disability-related needs included impulsivity, emotional dysregulation, poor judgment, transition-related difficulties, and the need for intensive behavioral supervision and intervention.

**87.** The conduct underlying the disciplinary proceedings was directly related to A.H.'s known

disability-related characteristics and occurred in a setting specifically identified in A.H.'s IEP and BIP as requiring heightened supervision and behavioral supports. Despite this knowledge, Defendant failed to reasonably accommodate A.H.'s disability-related needs and failed to properly implement the supports, supervision, interventions, and behavioral protections required under his IEP and BIP.

**88.** Rather than providing appropriate accommodations, behavioral supports, and disability-related interventions, Defendant responded to A.H.'s disability-related behaviors through exclusionary discipline, removal from educational services, expulsion, and disenrollment. Defendant thereby denied A.H. meaningful access to educational services, programs, and benefits available to nondisabled students.

**89.** Defendant's actions denied A.H. educational benefits and subjected him to discrimination solely by reason of his disability in violation of Section 504 and by reason of his disability in violation of Title II of the ADA.

**90.** Parent engaged in protected activity under the IDEA, Section 504, and the ADA by advocating on behalf of A.H. and asserting his educational and disability-related rights. Parent's advocacy activities included requesting educational, disciplinary, and implementation records; requesting procedural safeguards and clarification regarding the District's disciplinary actions; challenging the MDR process and its conclusions; asserting A.H.'s rights under the IDEA and other disability laws; requesting documentation regarding implementation of behavioral supports and services; and filing an expedited due process complaint challenging the District's disciplinary actions and alleged IDEA violations..

**91.** Following Parent's protected advocacy activities, Defendant escalated disciplinary measures against A.H., continued exclusionary disciplinary actions, excluded A.H. from educational services, proceeded with punitive disciplinary measures, and ultimately disenrolled A.H.

**92.** Upon information and belief, Defendant intentionally continued pursuing exclusionary discipline, expulsion, disenrollment, and removal from educational services despite knowing about A.H.'s

documented disability-related needs, ongoing disputes regarding implementation of required behavioral supports and supervision, unresolved procedural violations, and Parent's repeated objections and requests for records, clarification, and enforcement of IDEA protections. Defendant knew that A.H.'s IEP and BIP specifically identified hallway transitions and other unstructured settings as situations requiring increased supervision and behavioral intervention. Despite this knowledge, Defendant failed to meaningfully investigate whether required supports and supervision were actually being implemented, failed to ensure continuation of educational protections and services, and continued disciplinary actions despite unresolved concerns regarding manifestation, implementation failures, and compliance with IDEA procedures.

**93.** Defendant's actions were not isolated mistakes or mere negligence. Rather, despite repeated notice of implementation concerns, procedural deficiencies, disputed facts, and A.H.'s disability-related vulnerabilities, Defendant continued to proceed with exclusionary and disciplinary actions in conscious disregard of the substantial likelihood that A.H.'s federally protected educational and disability rights would be violated.

**94.** Defendant's actions were materially adverse and would discourage a reasonable parent from engaging in protected advocacy activity on behalf of a child with disabilities. The timing and sequence of the District's actions support a direct causal connection between Parent's protected advocacy and the adverse actions taken against A.H.

**95.** As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, A.H. suffered educational harm, loss of educational services, interruption of behavioral and mental health supports, emotional distress, loss of instructional time, stigma, regression, and denial of equal access to public educational benefits and services.

**96.** Plaintiff seeks declaratory relief, compensatory damages, compensatory educational services, equitable relief, correction of educational records as appropriate, attorneys' fees and costs as authorized by law, and all additional relief the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Ashley Verdin, individually and on behalf of A.H., and A.H., by and through his legal guardian, Ashley Verdin, respectfully request that this Court enter judgment in their favor and against Defendant St. Tammany Parish School Board and grant the following relief:

a. Reversal of the Decision and Order issued by Administrative Law Judge Esther A. Redmann in Louisiana Division of Administrative Law Docket No. 2025-24491-DOE-IDEA;

b. Declaratory relief finding that Defendant violated the IDEA, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act as alleged herein;

c. Declaratory relief finding that the December 19, 2025 MDR was procedurally and substantively deficient and failed to comply with 20 U.S.C. § 1415(k) and 34 C.F.R. § 300.530(e);

d. Injunctive and equitable relief requiring Defendant to reinstate A.H. to an appropriate educational placement and resume the provision of all special education services, related services, behavioral supports, accommodations, and protections required under the IDEA, A.H.'s IEP, and his BIP;

e. Compensatory educational services sufficient to remedy the educational harm, loss of instruction, interruption of behavioral and mental health supports, regression, and denial of educational benefit suffered by A.H. as a result of Defendant's actions and omissions;

f. Expungement, correction, and amendment of A.H.'s educational and disciplinary records to remove improper disciplinary findings, expulsion-related records, disenrollment records, and any related notations inconsistent with Plaintiffs' rights under the IDEA, Section 504, the ADA, and applicable Louisiana law;

g. Compensatory damages, to the extent authorized by law, for educational harm, emotional distress, denial of equal access to educational benefits and services, and other injuries resulting from Defendant's discrimination and retaliation in violation of Section 504 and Title II of the ADA;

h. Reimbursement of educational expenses, costs, and other out-of-pocket losses incurred by

Parent as a result of Defendant's unlawful conduct, to the extent authorized by law;

i. Reasonable attorneys' fees, litigation expenses, and costs pursuant to 20 U.S.C. § 1415(i)(3), 29 U.S.C. § 794a, 42 U.S.C. § 12133, and other applicable provisions of law; and

j. Such other and further legal, equitable, declaratory, or injunctive relief as this Court deems just and proper under the circumstances.

*

*

*

Respectfully submitted, this 26th day of May 2026.

By: /s/ Kimona Hogan
Kimona Hogan
LA State Bar No. 38019
Hogan Law Firm LLC

Physical Address:
176 Misty Pike Drive
Raleigh, NC 27063

Mailing Address:
P.O. Box 1261
Baton Rouge, LA 70821

225-800-7378( telephone)
hoganlawfirm@yahoo.com (email)

*Attorney for Ashley Verdin, individually and on behalf of A.H., a minor child, and A.H., a minor child, by and through his Legal Guardian, Ashley Verdin*